UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEREIDA B.,

        Plaintiff,

v.                                                                                          1:20-CV-1116
                                                                                            (ML)
COMMISSIONER OF SOCIAL
SECURITY[1],

        Defendant.

---

APPEARANCES:                                              OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      MELISSA KUBIAK, ESQ.
  Counsel for the Plaintiff
108 Westland Avenue
Rochester, New York 14618

SOCIAL SECURITY ADMINISTRATION              TIMOTHY SEAN BOLEN, ESQ.
  Counsel for the Defendant                            Special Assistant U.S. Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER

        Currently pending before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral

---

[1]     Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to modify the docket accordingly.

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if

1

argument was heard in connection with those motions on March 22, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is GRANTED.

2) Defendant's motion for judgment on the pleadings (Dkt. No. 21) is DENIED.

3) The Commissioner's decision denying Plaintiff Social Security benefits is REVERSED.

4) This matter is REMANDED to the Commissioner, without a directed finding of disability, for further administrative proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g).

5) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, REMANDING this matter to the Commissioner for further administrative proceedings consistent with this opinion and the oral bench decision, pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

Dated: March 25, 2022
      Binghamton, New York

_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

---

cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

```
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____
B

vs.                  1:20-CV-1116

COMMISSIONER OF SOCIAL SECURITY




_____




                Transcript of Decision & Order

                       March 22, 2022

                     Telephone Conference




        The HONORABLE MIROSLAV LOVRIC Presiding.




                    A P P E A R A N C E S


For Plaintiff:      MELISSA KUBIAK, ESQ.


For Defendant:      TIMOTHY BOLEN, ESQ.


                Ruth I. Lynch, RPR, RMR, NYSRCR
                 Official United States Court Reporter
                Binghamton, New York  13901
```

1          THE COURT:  The Court wants to begin by indicating
2    that Plaintiff has commenced this proceeding pursuant to
3    Title 42 U.S. Code Sections 405(g) and 1383(c) to challenge
4    the adverse determination by the Commissioner of Social
5    Security finding that she was not disabled at the relevant
6    times and therefore ineligible for the benefits that she
7    sought.
8              By way of background the Court notes as follows:
9              Plaintiff was born in 1967.  She is currently
10   approximately 54 years of age.  She was 48 years old,
11   approximately, at the alleged onset of her disability on
12   December 17, 2016.
13             At the time of the administrative hearing on
14   May 13th, 2019, Plaintiff lived in an apartment with her
15   husband in the Buffalo, New York, area.
16             Plaintiff is approximately five feet one inch in
17   height, weighs approximately 150 pounds.
18             Plaintiff completed ninth grade, can read and
19   write in English, and can perform simple math.
20             Plaintiff has past relevant work experience as an
21   outreach activity aide, a general office clerk, and a
22   bartender.
23             Plaintiff suffers from lumbar degenerative disc
24   disease, cervical degenerative disc disease, psoriatic
25   arthropathy, generalized osteoarthritis, status post left

shoulder tear and arthroscopy, occipital neuralgia of the left side, migraines, obesity, depression, and anxiety.

Plaintiff is prescribed Claritin, clobetasol cream, co-enzyme diclofenac, gingko biloba, Humira, hydroxyzine, isoniazid, magnesium, olopatadine; olopatadine nasal spray, I should say; omeprazole, pyridoxine, ranitidine, venlafaxine, and Singulair.

During her administrative hearing, Plaintiff reported that she was able to get dressed, bathe, do housework, reach for items in front of her, write with a pen in her dominant hand, and eat with utensils like a knife and fork.  However, Plaintiff testified that her husband does the grocery shopping.  Plaintiff also testified that she remembers to take her medication as prescribed and can follow instructions but has difficulties with focusing and concentrating.

Procedurally the Court notes as follows in this matter:

Plaintiff protectively applied for Title II benefits on February 9th, 2017, alleging an onset date of December 17th, 2016.

In support of her claim for disability benefits, Plaintiff claims disability based on psoriatic arthritis, depressive disorder, irritable bowel syndrome, gastroesophageal reflux disease, acute sinusitis,

1  dermatographic uticaria, vasomotor rhinitis, and hiatal
2  hernia.
3         Administrative Law Judge Bonnie Hannan conducted a
4  hearing on May 13th, 2019, to address Plaintiff's
5  application for benefits.  Plaintiff was represented by
6  Nicholas DiVirgilio.  Plaintiff and a vocational expert
7  testified at that hearing.
8         ALJ Hannan issued an unfavorable decision on
9  June 13th, 2019.  That became a final determination of the
10 agency on July 22nd, 2020, when the Social Security
11 Administration Appeals Council denied Plaintiff's
12 application for review.
13        This action was commenced on September 16, 2020,
14 and it is timely.
15        In her decision, ALJ Hannan applied the familiar
16 five-step test for determining disability.
17        At step one, she concluded that Plaintiff had not
18 engaged in substantial gainful activity since December 17th,
19 2016, the alleged onset date.
20        At step two, she concluded that Plaintiff suffers
21 from severe impairments that impose more than minimal
22 limitations on her ability to perform basic work activities,
23 specifically the severe impairments are as follows:  Lumbar
24 degenerative disc disease, cervical degenerative disc
25 disease, psoriatic arthropathy, generalized osteoarthritis,

1  status post left shoulder tear and arthroscopy, occipital
2  neuralgia on the left -- of the left side, migraines,
3  obesity, depression, and anxiety.  In addition, the ALJ
4  concluded that the record failed to establish that
5  Plaintiff's fibromyalgia was a medically determinable
6  impairment.
7           At step three, ALJ Hannan concluded that
8  Plaintiff's conditions do not meet or medically equal any of
9  the listed presumptively disabling conditions set forth in
10 the Commissioner's regulations, and the ALJ focused on the
11 following listings:  Listing 1.02 deals with major
12 dysfunction of a joint; listing 1.04 dealing with disorders
13 of the spine; listing 12.04 dealing with depressive,
14 bipolar, and related disorders; and listing 12.06, dealing
15 with anxiety and obsessive compulsive disorders.  The ALJ
16 also considered Plaintiff's obesity according to SSR 19-2p
17 and her migraines, headaches in accordance with
18 Section 11.00 concerning neurological impairments.
19           Between steps three and four, the ALJ determined
20 that Plaintiff retains the residual functional capacity,
21 also known as RFC, to perform light work as defined in
22 20 CFR 404.1567(b) except that she can occasionally reach
23 overhead to the left and frequently reach overhead to the
24 right.  The ALJ noted also she can frequently climb ramps
25 and stairs but never climb ladders, ropes, or scaffolds.

The ALJ went on to state Plaintiff can frequently balance and occasionally stoop, kneel, crouch, and crawl. Plaintiff can never -- Plaintiff -- excuse me, Plaintiff can never work at unprotected heights or with moving mechanical parts but can tolerate moderate noise. Plaintiff can never have exposure to extreme cold or extreme heat. Plaintiff must have access to a restroom facility but time off task can be accommodated by normal breaks.

The ALJ continued that Plaintiff can perform simple, routine, and repetitive tasks. Plaintiff can make simple work-related decisions and can tolerate few changes in a routine work setting defined as performing the same duties at the same station or location day to day. The ALJ also noted Plaintiff can have occasional and superficial contact with supervisors, coworkers, and the public.

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work as an outreach activity aide, general office clerk, or bartender. The ALJ therefore proceeded to step five.

At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. The vocational expert testified that given all of these factors, an individual would be able to perform the requirements of occupations

1   such as labeler, marker, and folder.  As a result, the ALJ
2   concluded that Plaintiff has not been under a disability as
3   defined in the Social Security Act.
4           As the parties know, the Court's functional role
5   in this case is limited and extremely deferential.  I must
6   determine whether correct legal principles were applied and
7   whether the determination is supported by substantial
8   evidence, which is defined as such relevant evidence as a
9   reasonable mind would find sufficient to support a
10  conclusion.  As the Second Circuit noted in case of
11  Brault V. Social Security Administration Commissioner, found
12  at 673 F.3d 443, 2012 case, the Second Circuit noted the
13  standard is demanding, more so than the clearly erroneous
14  standard.  The Second Circuit also noted in Brault that once
15  there is a finding of fact, that fact can be rejected only
16  if a reasonable fact-finder would have to conclude
17  otherwise.
18          In this case Plaintiff raised one contention.
19  Plaintiff argues that the exclusion of fibromyalgia as a
20  medically determinable impairment was not supported by
21  substantial evidence, causing subsequent steps in the
22  sequential analysis to be unsupported by substantial
23  evidence.
24          The Court provides the following analysis, and
25  this analysis is what the Court bases its ultimate decision.

As the parties identified in their briefs, pursuant to SSR 12-p, there are two sets of criteria for diagnosing fibromyalgia. The first set of criteria requires, one, a history of widespread pain that has persisted for at least three months; two, at least 11 positive tender points on physical examination; and, three, evidence that other disorders that could have caused the symptoms or signs were excluded.

The second set of criteria requires, one, a history of widespread pain; two, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occuring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and, three, evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

Either set of criteria is sufficient to establish the impairment.

Here in this case the ALJ's discussion of fibromyalgia, which concluded that it was not a medically determinable impairment, references two considerations. First, she concluded that the record did not indicate at least 11 positive bilateral tender points on physical examination. See transcript at page 13. That finding is

only relevant to one of the two criteria applicable to fibromyalgia.  Second, the ALJ found that the record indicated that fibromyalgia overlapped with Plaintiff's psoriatic arthritis and osteoarthritis.  See transcript page 13.

Now with respect to the ALJ's first consideration, as Plaintiff argues, Dr. Oza specified Plaintiff's bilateral tender points, which numbered more than the minimum number of 11.  See transcript 1161.  In addition, as I stated, the finding of whether the record indicates at least 11 tender points is only one relevant -- is -- excuse me, let me read that again.  In addition, as I stated, the finding of whether the record indicates at least 11 tender points is only relevant to one of the two criteria applicable to fibromyalgia.  Further, Defendant does not appear to contest this point because her response brief focuses solely on the second finding of the ALJ.

With respect to the ALJ's second consideration, I find that the ALJ did err.  Initially, I note that the ALJ used -- excuse me, let me read that again.  Initially, I note that the language used by the ALJ is vague and does not clearly articulate a finding that the record lacks evidence that other disorders could have caused the symptoms that -- could have caused the symptoms were excluded, which is the argument set forth in Defendant's brief.

1      However, even assuming that the ALJ did not make
2  that finding, as Defendant asserts, the ALJ's decision is
3  insufficient to demonstrate the proper analysis was
4  conducted.  On this point the Court references the case of
5  Brandy L. V. Kijakazi, that can be found at 20-CV-1127,
6  that's a 2022 Westlaw 675709 at page 4 case, it's a Northern
7  District of New York decision issued March 7th of 2022, and
8  therein citing case of Dawn P. V. Berryhill, a 2019 Westlaw
9  1024279 at page 7 case.  That's a Northern District New York
10 March 4th, 2019 case, standing for the proposition the ALJ
11 has -- the ALJ has an obligation to provide a sufficiently
12 specific decision so that the reviewing court can assess the
13 propriety of the decision.
14     In this case here, the record indicates the
15 following:  On July 9th, 2018, NP Sgroi examined Plaintiff
16 and concluded that, quote, I feel that she has an overlap of
17 fibromyalgia and psoriatic arthritis, end quote.  Transcript
18 at page 1157.
19     On November 5th, 2018, Dr. Oza noted that
20 Plaintiff's symptoms including pain, fatigue, poor quality
21 of sleep, cognitive symptoms, trigger points, and the
22 absence of certain clinical findings such as skin rash, oral
23 ulcers, or synovitis suggested a diagnosis of fibromyalgia.
24 See transcript 1164.
25     Next, on February 4th, 2019, Dr. Henry noted

1  fibromyalgia under a heading titled assessments and
2  prescribed Plaintiff Levorphanol to assist -- assist with
3  the pain Plaintiff complained of due to fibromyalgia and
4  arthritis.  See transcript 659.
5           On February 5th, 2019, NP Sgroi examined Plaintiff
6  and noted that Plaintiff, quote, continues to have diffuse
7  positive tender points, nighttime awakening, nonrestful
8  sleep, and daytime fatigue that would all go along with the
9  diagnosis of myofascial pain, fibromyalgia.  This condition
10 may also be exacerbated pain due to other problems like
11 osteoarthritis, end quotation.  That can be found at
12 transcript 1168.
13          Next, on February 8 of 2019 Plaintiff saw
14 NP McCormack and it was noted that she was recently
15 diagnosed with fibromyalgia.  See transcript page 653.
16          Thereafter, on March 20th, 2019, Plaintiff was
17 seen by Dr. Schlehr, where it was noted that Plaintiff was
18 recently diagnosed with fibromyalgia.  See transcript 1582.
19          Then on April 23rd, 2019, Plaintiff saw
20 NP McCormack for follow-up on her fibromyalgia.  See
21 transcript 1382.
22          The Court states that it may be that substantial
23 evidence would support a well-reasoned conclusion that
24 Plaintiff failed to establish the exclusion of other causes
25 of her symptoms.  I conclude only that the ALJ erred in

1   finding that there was no evidence of exclusion, to the
2   extent that the ALJ's vague statement could be construed as
3   making that conclusion, and I find that remand is required
4   for a complete review of whether Plaintiff has carried her
5   burden to establish fibromyalgia as a severe impairment.
6            Although an ALJ's failure to consider an
7   impairment to be severe may be harmless error, that is so
8   only if the ALJ found other severe impairments and
9   considered the nonsevere impairment when formulating the
10  claimant's RFC.
11           In this case, the Court cannot conclude that the
12  error was harmless in this case.  Courts have long
13  recognized the unique nature of fibromyalgia makes it a
14  particularly difficult condition to evaluate in the context
15  of disability cases.  Part of the difficulty in analyzing it
16  relates to the fact that there are no objective tests which
17  can conclusively confirm the disease.  Here, in later parts
18  of the ALJ's sequential analysis, she notes that Plaintiff's
19  subject complaints are not consistent with the medical
20  record taken as a whole.  See transcript 16 through 17.  For
21  the reasons set forth in Plaintiff's brief, given that a
22  different analysis of Plaintiff's fibromyalgia step two may
23  have impacted the findings, the Court cannot find that the
24  step two error was harmless.  See Brandy L., 2022 Westlaw
25  675709 at page 4, and a collection of cases therein.

1          As a result of this analysis, Plaintiff's motion
2   for judgment on the pleadings is granted.  Defendant's
3   motion for judgment on the pleadings is denied.  And
4   Defendant's decision denying Plaintiff disability benefits
5   is hereby reversed and the matter is remanded pursuant to
6   sentence 4 of Section 450(g) for further proceedings.
7          That constitutes the decision and order of this
8   court.
9                         - - - - -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25